# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-CP-01082-COA

CRAIG BECK A/K/A CRAIG T. BECK                    APPELLANT

v.

STATE OF MISSISSIPPI                              APPELLEE

DATE OF JUDGMENT:           08/21/2025
TRIAL JUDGE:                HON. JOSEPH H. LOPER JR.
COURT FROM WHICH APPEALED:  WEBSTER COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     CRAIG BECK (PRO SE)
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: ASHLEY LAUREN SULSER
NATURE OF THE CASE:         CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                AFFIRMED - 06/30/2026
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., McDONALD AND WEDDLE, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. Craig Beck appeals the Webster County Circuit Court's denial of his motion for post-conviction relief (PCR) in which he challenged the legality of his guilty plea to a charge of sexual battery of a minor. On appeal, Beck argues (1) that the circuit court erred by failing to hold a competency hearing to determine if he was competent to plead guilty. Additionally, Beck contends (2) that his indictment was defective, (3) that his plea was involuntary because there was an insufficient factual basis to support the charge, and (4) that his counsel was ineffective. The court found that the PCR motion was frivolous and not only denied it, but also ordered that sixty days of Beck's accrued earned time be forfeited pursuant to

Mississippi Code Annotated section 47-5-138(3) (Rev. 2023).[1] Having reviewed the record, arguments presented, and relevant caselaw, we affirm the circuit court's order.

## Facts and Procedural History

¶2. On May 23, 2023, a Webster County grand jury indicted Beck on three counts: (1) for statutory rape of his daughter, a child between fourteen and sixteen years old, between February 10, 2017, and February 9, 2019, in violation of Mississippi Code Annotated section 97-3-65(1)(a) (Count I), (2) for being in a position of trust and sexually penetrating a child less than eighteen years old between February 10, 2019, and February 9, 2021, in violation of Mississippi Code Annotated section 97-3-95(2) (Count II), and (3) for forcible sexual intercourse with a minor between February 10, 2021, and November 1, 2022, in violation of Mississippi Code Annotated section 97-3-65(4)(a) (Count III).

¶3. On January 22, 2024, Beck, who was represented by counsel, pled guilty to Count II, and the State dismissed the other counts. At his plea hearing, the circuit court confirmed

---

[1] Subsections 47-5-138(2) and (3), titled in part "Earned time allowance program; earned-release supervision," provide in part:

> (2) An inmate may forfeit all or part of his earned time allowance for a serious violation of rules. No forfeiture of the earned time allowance shall be effective except upon approval of the commissioner, or his designee, and forfeited earned time may not be restored.
>
> (3)(a) For the purposes of this subsection, "final order" means an order of a state or federal court that dismisses a lawsuit brought by an inmate while the inmate was in the custody of the Department of Corrections as frivolous, malicious or for failure to state a claim upon which relief could be granted.
> (b) On receipt of a final order, the department shall forfeit:
>> (i) Sixty (60) days of an inmate's accrued earned time if the department has received one (1) final order as defined herein;
> . . . .

with Beck's attorney that he had reviewed the plea petition with Beck and that Beck understood the consequences of pleading guilty. The court then questioned Beck to determine his understanding of the proceedings and the rights he was waiving by pleading guilty. Beck told the court that he graduated college with an associate's degree. He told the court he had a history of "transferred" post-traumatic stress disorder (i.e., his father was a Vietnam veteran "who brought the war home with him"), bipolar disorder, anxiety, and depression. Despite these health issues, Beck told the court he understood what was going on and the information being given to him during the hearing. He admitted he had signed and agreed with the contents of the guilty plea petition he had filed. Beck testified that he understood the charges, and he admitted that he had sex with his underage daughter. Beck further testified that he was satisfied with his attorney's representation and had no complaints. At no time did Beck or his attorney ask the court for a mental evaluation of Beck or request a competency hearing.

¶4. After questioning Beck, the court stated that it had received and reviewed a letter from Beck's wife, Stephanie. In the letter, Stephanie said that her husband had struggled with mental illness for fifteen years and had been prescribed many medications. Further, Stephanie stated, "[T]here were many things done that shouldn't have happened but I have seen a change in him since his time in the Webster County Jail. Another inmate introduced him to the Bible and God. He recognizes his wrongdoing and the pain he has caused."

¶5. At the close of the hearing, the circuit court accepted Beck's plea and sentenced Beck to twenty years in the custody of the Mississippi Department of Corrections.

3

¶6. On June 20, 2025, Beck filed a PCR motion, alleging that he was not competent to enter a guilty plea and that the court should have held a hearing on his competency, that his plea was not knowing and voluntary because an insufficient factual basis was presented to the court to support his guilty plea, that his counsel was ineffective, and that the indictment was defective. *See* Miss. Code Ann. § 99-39-5 (Rev. 2020). In support of his motion, Beck filed a copy of the transcript of the plea hearing, along with a copy of his indictment, a personal affidavit, his medical records, and the letter his wife had written to the court for its consideration in Beck's plea hearing.

¶7. In his affidavit, Beck said that when he was arrested for sexual battery, he did not know what that was and he asked that his wife, who has been his "caregiver" for twenty years, be present during his interrogation by police. The police refused his request. Beck further said he saw his attorney once while he was in jail and then on the day before the plea hearing. Beck stated that he told his attorney that he was on disability, but his attorney never secured his medical records. Beck claimed that his lawyer told him that being disabled would not help him and that he had to plead guilty, or he would spend the rest of his life in prison. Beck said his attorney never discussed the indictment with him, or his defenses. During the plea hearing, Beck said, his attorney told him to answer "yes" to the judge's questions, or the judge would give him life in prison. Beck said he wanted to go to trial, but neither his lawyer nor the judge wanted to hear what he said. He claimed he had been railroaded.

¶8. On August 21, 2025, the circuit court issued a sixteen-page memorandum opinion and

4

order finding that a hearing on the PCR motion was not necessary and that there was no merit to Beck's motion. The court also forfeited sixty days of Beck's accrued good time.

¶9. On September 9, 2025, Beck appealed the order denying his PCR motion, presenting to this Court the same issues he had raised in his PCR motion.

## Standard of Review

¶10. "When reviewing a circuit court's denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Harris v. State*, 365 So. 3d 301, 304 (¶3) (Miss. Ct. App. 2021) (quoting *Hays v. State*, 282 So. 3d 714, 716-17 (¶5) (Miss. Ct. App. 2019)).

## Discussion

### I. Whether the circuit court erred by not holding a competency hearing before Beck pled guilty.

¶11. "Constitutional due process rights prohibit criminal prosecution if the defendant is not legally competent." *Harris*, 365 So. 3d at 304 (¶14). Rule 12.2 of the Mississippi Rules of Criminal Procedure provides that a court may at any time, on its own or on the motion of a party, order a mental examination for a defendant if the court has reasonable grounds to believe that the defendant is mentally incompetent.[2] Beck argues that the circuit court should

---

[2] Mississippi Rule of Criminal Procedure 12.2(a) reads:

(a) Competency to Stand Trial or Be Sentenced. If at any time before or after indictment, the court, on its own motion or the motion of any party, has reasonable grounds to believe that the defendant is mentally incompetent, the court shall order the defendant to submit to a mental examination.

have ordered a competency hearing before accepting his guilty plea because of Beck's history of mental illnesses.

¶12.    "The standard of competency necessary to enter a plea of guilty is the same as that for determining competency to stand trial." *Harris*, 365 So. 3d at 306 (¶6) (quoting *Russell v. State*, 44 So. 3d 431, 435 (¶13) (Miss. Ct. App. 2010)).  Namely, it is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'has a rational as well as factual understanding of the proceedings against him.'" *Montalto v. State*, 119 So. 3d 1087, 1093 (¶12) (Miss. Ct. App. 2013) (quoting *Martin v. State*, 871 So. 2d 693, 697-98 (¶17) (Miss. 2004)).

¶13.    The determination of whether a trial court has a "reasonable ground" to suspect mental incompetency is within the discretion of the trial court.  *Joiner v. State*, 240 So. 3d 1243, 1245 (¶6) (Miss. Ct. App. 2018) (citing *Harden v. State*, 59 So. 3d 594, 601 (¶14) (Miss. 2011)).  "This discretion is broad in determining whether to order a mental evaluation and competency hearing. This is because the trial judge is in the best position to observe the appellant and his demeanor." *Id*. (citation omitted).  "The standard of review for an appellate court to determine if there was an abuse of discretion is whether "the trial judge received information which, objectively considered, should reasonably have raised a doubt about the defendant's competence and alerted the judge to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense." *Id*. at (¶7) (quoting *Goff v. State*, 14 So. 3d 625, 644 (¶66) (Miss. 2009)).  "[T]here is no abuse of discretion in denying a mental evaluation where there has

6

been no proof presented to the trial judge that such an examination is needed." *Coker v. State*, 909 So. 2d 1239, 1241 (¶8) (Miss. Ct. App. 2005). Moreover, under Rule 12.1 of the Mississippi Rules of Criminal Procedure, there is a presumption of mental competency.[3] The defendant bears the burden to prove by substantial evidence that he or she is mentally incompetent to stand trial. *Dorsey v. State*, 310 So. 3d 1238, 1248 (¶30) (Miss. Ct. App. 2021).

¶14. From our review of the record, we agree with the circuit court that Beck had not met his burden of raising reasonable grounds for a mental evaluation or competency hearing. The documents Beck attached to his PCR motion do not establish his incompetency at the time of the plea hearing, nor did they require the trial court to order a mental evaluation or conduct a competency hearing.

*Stephanie Beck's Letter*

¶15. Beck's wife's letter merely confirmed that Beck had been struggling with several mental conditions for years. She did not say that at the time of the hearing he was not able

---

[3] This rule provides in part:

> (a) Mental Competency. There is a presumption of mental competency. In order to be deemed mentally competent, a defendant must have the ability to perceive and understand the nature of the proceedings, to communicate rationally with the defendant's attorney about the case, to recall relevant facts, and to testify in the defendant's own defense, if appropriate. The presence of a mental illness, defect, or disability alone is not grounds for finding a defendant incompetent to stand trial. If as a result of mental illness, defect, or disability, a defendant lacks mental competency, then the defendant shall not be tried, convicted, or sentenced for a criminal offense.

MRCrP 12.1(a).

7

to understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense. To the contrary, Stephanie stated that she had seen a change in Beck since he had been in jail. She said, "He recognizes the wrong he had done and the pain he has caused." This indicated that Beck was competent enough to comprehend the crime he had committed and its ramifications. In addition, Beck's own sworn statement dealt mainly with his diagnoses of various mental conditions, not with their effect on him on the day he pled guilty. Rather, he addressed what his lawyer purportedly told him to make him plead guilty.

*Beck's Medical Records*

¶16. Moreover, the medical records Beck attached to the PCR motion indicated that years earlier, in 2009, Beck's mother had him evaluated for possible commitment as a result of a family disagreement. At that time, Beck admitted to having smoked marijuana for seventeen years. The doctor diagnosed Beck with anxiety depression and possible bipolar disorder, but he found that Beck was not suicidal or psychotic. The doctor ordered no medications and recommended outpatient treatment when Beck returned to Texas.

¶17. Beck's more recent records from 2019, 2022, 2023, and 2024 show him being treated for a variety of physical ailments—degenerative lumbar disease, pharyngitis, and hypertension. On January 13, 2023, Beck experienced a panic attack when he had not had his medical marijuana for several days. On April 11, 2023, he sought treatment for diabetes, hypertension, abdominal pain, and rectal bleeding. The record from January 15, 2024, when Beck returned for treatment of those same conditions and symptoms, contained the results of a psychiatric evaluation at that time, which reported: "No SI [(no suicidal ideation)], nor

8

HI [(no homicidal ideation)], no hallucinations, no depression, no anxiety." A week later, Beck pled guilty. Although the records reflect ongoing depression and anxiety, there is no documentation of any of those conditions affecting Beck's ability to reason and communicate as of the time of the plea hearing. Moreover, we have previously held that the presence of a mental illness, defect, or disability alone is not grounds for finding a defendant incompetent. *Harris*, 365 So. 3d at 304 (¶4).

¶18. After reviewing the transcript of Beck's plea hearing, we find nothing that would have raised a doubt about Beck's competence or ability to understand what was going on at the time of the plea hearing. Beck repeatedly told the court that he understood the proceeding despite his mental illness and the medications he was taking:

> [COURT]: Right now, you understand all proceedings that are going to be taking place concerning your case? Are you clear-headed?
>
> A. Yes, sir.
>
> Q. Are you having any difficulties presently understanding information that might be provided to you by the Court?
>
> A. No, sir.
>
> Q. And are you taking medication for these alleged problems?
>
> A. Yes, sir.
>
> Q. And are they keeping you -- I guess where you do understand all the matters and information that might be stated to you?
>
> A. Yes, sir.

Beck stated he was not under the influence of drugs or alcohol, that he was "clearheaded," and that he understood his rights and the plea proceeding. This Court gives great weight to

9

statements the defendant makes under oath during the plea hearing. *Russell*, 44 So. 3d at 435 (¶15). Moreover, Beck's attorney vouched for his client's competence, and he told the court that Beck had understood the contents of his plea petition when he signed it.

¶19. *Harris v. State* is closely on point. There Harris was charged with first-degree murder but pled guilty to second-degree murder. *Harris*, 365 So. 3d at 304 (¶2). He then filed a PCR motion arguing, among other things, that the court should have sua sponte ordered a competency hearing because of his depression, anxiety, and prior suicide attempt. *Id*. at 304, 306 (¶¶4, 12). On the appeal of the denial of his PCR motion, Harris raised the same argument. *Id*. at 305 (¶8). We reviewed the transcript of Harris's plea hearing, which showed that the court questioned Harris about his mental illnesses, *id*., and that the record reflected Harris "was alert, able to communicate rationally with his attorney and recall facts, and understood the nature of the proceedings." *Id*. at (¶9). We further held that other documents Harris attached to his PCR motion, including pharmacy records of his medications and a suicide attempt years before, were not presented to the court during the plea hearing and could not form the basis for reasonable grounds to question Harris's competency. *Id*. at 307 (¶12).

¶20. Similar to *Harris*, in the case at hand, Beck made no request for a medical evaluation and presented no medical records at his plea hearing to require the court to sua sponte order one. Moreover, in his PCR motion, Beck did not produce sufficient evidence to establish reasonable grounds for the trial court to order a mental examination or hold a competency hearing. Thus, we find no merit to Beck's PCR argument that the trial court abused its

10

discretion concerning his competency to plead guilty.

## II.    Whether Beck's indictment was defective.

¶21.    Beck further argues that his indictment was legally defective, warranting reversal of his conviction.  "We apply a de novo review to an appellant's challenge to the sufficiency of an indictment." *Harrison v. State*, 421 So. 3d 331, 333 (¶5) (Miss. Ct. App. 2025) (citing *Bradshaw v. State*, 371 So. 3d 822, 829 (¶15) (Miss. Ct. App. 2023)).  "The issue of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this Court." *Strickland v. State*, 417 So. 3d 189, 191 (¶4) (Miss. Ct. App. 2025) (quoting *Russell v. State*, 924 So. 2d 604, 607 (¶3) (Miss. Ct. App. 2006)).

¶22.    Beck's indictment begins with "State of Mississippi v. Craig Beck."  Count II of Beck's indictment, to which he pled guilty, charged him as follows:

### COUNT II

On or about or between February 10, 2019 and February 9, 2021, in Webster County, Mississippi, and within the jurisdiction of this court, did wilfully, unlawfully, intentionally and feloniously engage in sexual penetration with [AB],[4] a child under the age of eighteen (18) years, the said Craig Beck, being in a position of trust and authority over the child, to wit: [AB] in violation of Miss. Code Ann. §97-3-95(2) as amended, constituting a common plan or scheme or a series of related acts or transactions and against the peace and dignity of the State of Mississippi.

¶23.    Rule 14.1(a)(1) of the Mississippi Rules of Criminal Procedure sets out the required contents of an indictment:

The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the nature and cause

---

[4]  For privacy reasons, we use fictitious initials for the minor.

11

of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them.

Rule 14.1(a)(2) lists specific items required, including the name of the accused.[5] "The purpose of an indictment is to inform the defendant with some measure of certainty as to the nature of the charges brought against him so that he may have a reasonable opportunity to prepare an effective defense. The indictment shall contain the essential facts constituting the offenses charged and shall fully notify the defendant of the nature and cause of the accusation." *Hubbard v. State*, 269 So. 3d 368, 370 (¶7) (Miss. Ct. App. 2018). An indictment must provide "a concise and clear statement of the elements of the crimes charged." *Evans v. State*, 916 So. 2d 550, 551 (¶5) (Miss. Ct. App. 2005) (quoting *Williams v. State*, 445 So. 2d 798, 804 (Miss. 1984)).

¶24. In this case, Beck was charged with violating Mississippi Code Annotated section 97-3-95(2) (Supp. 2017), which provided:

> A person is guilty of sexual battery if he or she engages in sexual penetration

---

[5] This subsection reads:

> (2) Other Matters. An indictment shall also include the following:
> (A) the name of the accused;
> (B) the date on which the indictment was filed in court;
> (C) a statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
> (D) the county and, in two-district counties, the judicial district in which the indictment is brought;
> (E) the date and, if applicable, the time at which the offense was alleged to have been committed;
> (F) the signature of the foreperson of the grand jury issuing it; and
> (G) the words "against the peace and dignity of the state."

MRCrP 14.1(a)(2).

with a child under the age of eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child's . . . parent . . . .

It is clear that the language of Beck's indictment tracked the language of the statute. We have held that using language in an indictment that almost identically tracks the language of a statute is sufficient. *Burgin v. State*, 336 So. 3d 1115, 1119 (¶12) (Miss. Ct. App. 2021); *McGilvary v. State*, 290 So. 3d 1273, 1279 (¶20) (Miss. Ct. App. 2020).

¶25. Beck argues, however, that his indictment was defective because it "did not name him (or anyone) as the defendant of the underlying crime of sexual battery, [and] such an indictment constitutes no offense." However, his name appears in the heading of the indictment and in the body of Count II. Apparently, Beck feels that Count II should have read:

COUNT II

On or about or between February 10, 2019 and February 9, 2021, in Webster County, Mississippi, and within the jurisdiction of this court, *Craig Beck* did wilfully, unlawfully, intentionally . . . .

However, Beck provides no authority that the failure to include his name in that place renders the indictment defective. "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." *Roberson v. State*, 281 So. 3d 343, 347 (¶16) (Miss. Ct. App. 2019) (quoting *King v. State*, 239 So. 3d 508, 512 (¶18) (Miss. Ct. App. 2017)). Nonetheless, the failure to include Beck's name in that specific place did not lessen the indictment's notice to him of the elements of the crime charged against him. Had this issue been raised at the trial level, the indictment was easily correctable. In *Latham v. State*, 430

13

So. 3d 900, 903 (¶7) (Miss. Ct. App. 2025), Latham argued that the indictment was defective because it failed to identify him as the defendant when it misspelled his first name. We rejected his argument finding that the matter was correctable, and it was not substantive. *Id.* at (¶9).

¶26. In this case, Beck's name appears in the heading of the indictment and identifies Beck in Count II, the count to which he pled guilty, as the individual who was thirty-six months plus older than the victim and the one in the position of trust who had sex with her. At the plea hearing, Beck admitted that he had sex with his underage daughter and was guilty of the crime charged. Moreover, the indictment charges a single individual, Beck, so there was no confusion as to who was the defendant. Accordingly, we find that Beck's indictment gave him sufficient notice of the facts, elements, nature and cause of the accusations against him and we find no merit to Beck's argument that indictment was defective for not naming him as a defendant.

¶27. Beck further argues that his indictment was defective because it listed no specific dates of the alleged battery. However, we have noted that "our Supreme Court and this Court have rejected the argument that broad time frames in child sexual abuse cases will render an indictment insufficient, at least 'so long as the defendant is fully and fairly informed of the charges against him.'" *Ellzey v. State*, 412 So. 3d 358, 367-68 (¶14) (Miss. Ct. App. 2024) (quoting *Tapper v. State*, 47 So. 3d 95, 101 (¶22) (Miss. 2010); *Bradshaw v. State*, 371 So. 3d 822, 831 (¶23) (Miss. Ct. App. 2023)). We held that "an incorrect date or a broad range of dates does not render an indictment insufficient unless the date is 'of the essence of the

14

offense' or the date range fails to 'fully and fairly inform' the defendant 'of the charges against him.'" *Ellzey*, 412 So. 3d at 368 (¶14) (quoting Miss. Code Ann. § 99-7-5; *Tapper*, 47 So. 3d at 101 (¶22)). In *Ellzey*, we found that the date of sexual abuse offenses was not "of the essence of the offense" because it was undisputed that the child was underage and that Ellzey occupied a position of trust as her stepfather. *Id.* at (¶15). Similarly in this case, Beck was the father (a position of trust) of the victim, who was indisputably underage. Moreover, we have held that "[a]n indictment that states a general timeframe for sexual abuse is sufficient in cases of sexual battery of a minor," *Bradshaw*, 371 So. 3d at 831 (¶24), and that a sexual battery indictment with a three-year date range was not defective. *Harrison*, 421 So. 3d at 334 (¶6). Accordingly, because Beck's indictment tracked the language of the statute and adequately named him to give him notice of the charges against him, and because specific dates were not an essential element of the offense, we find no merit to Beck's argument that the indictment was defective.

### III. Whether there was a sufficient factual basis presented to the court to support Beck's guilty plea.

¶28. Beck next argues that his plea was not knowingly, intelligently, and voluntarily made because during the plea hearing the State provided an insufficient factual basis to support each of the essential elements of sexual battery. He contends that the State's inadequate explanation of the facts to support the charges affected his understanding of the charge and invalidated the plea.

¶29. "Before the trial court may accept a plea of guilty, the court must determine . . . that

15

there is a factual basis for the plea." MRCrP 15.3(c).[6] *Colenberg v. State*, 361 So. 3d 692, 696-97 (¶9) (Miss. Ct. App. 2022). "We recognize that a factual basis is an "essential part of the constitutionally valid and enforceable decision to plead guilty." *Lott v. State*, 597 So. 2d 627, 628 (Miss. 1992). The factual basis must be specific enough "to allow the court to determine that the defendant's conduct was within the ambit of that defined as criminal." *Id*. However, the failure to set out specific facts "does not in and of itself render a guilty plea involuntary, nor does it cause a factual showing to fail merely because the details that may be brought forth at trial are not fleshed out." *Simoneaux v. State*, 29 So. 3d 26, 30 (¶7) (Miss. Ct. App. 2009).

¶30. In the case at hand, the record establishes that the State provided an adequate factual basis for the court to accept Beck's guilty plea. Beck told the court that he had been advised of the elements and the facts the State needed to prove:

> Q. Has he advised you of and counseled with you and notified you and told you of the elements of the crime of sexual battery in position of trust or authority and by that I mean do you understand the facts the State would have to prove before you could be found guilty?
>
> A. Yes, sir.
>
> Q. Has he also discussed with you any possible defenses you might have

---

[6] Mississippi Rules of Criminal Procedure Rule 15.3(c) provides:

> Voluntariness. Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and *that there is a factual basis for the plea*. A plea is not voluntary if induced by fear, violence, deception, or improper inducements. A showing that the plea of guilty was voluntarily and intelligently made must appear in the record.

(Emphasis added).

to this charge?

A.     Yes, sir.

Further, the State relayed the factual basis that Beck himself confirmed:

BY THE COURT:   Now, the Court will hear from the State on the factual basis of the charge.

BY MR. HOWIE:   In this case the State would show on Count II that between February 10, 2019 and February 9, 2021 in Webster County, Mississippi this defendant knowingly and intentionally engaged in sexual penetration with [AB], a child under the age of 18 and that when this was going on, he was in a position of trust or authority over the child, being he was the father of the victim.

BY THE COURT:   So you are saying today you had sex with your own daughter; is that right?

BY THE DEFENDANT:   That's what I am charged with. Yes, sir.

BY THE COURT:   Well, are you guilty of it?

BY THE DEFENDANT:   No, sir.

BY MR. HORAN:   Your Honor –

BY THE COURT:   You are under oath.  Let me remind you.

BY MR. HORAN:   Can I have an opportunity to confer with my client briefly, off the record?

(WHEREUPON, THERE WAS AN OFF-THE-RECORD DISCUSSION.)

BY MR. HORAN:   Your Honor, we are prepared to go back on the record. If you don't mind, will you re-ask that line of questions.

BY THE COURT:   I was saying you had sex with your own daughter; is that correct?

BY THE DEFENDANT:   Yes, sir.

17

> BY THE COURT: And you are pleading guilty because you are, in fact, guilty; is that correct?
>
> BY THE DEFENDANT: Yes, sir.

The key facts that the State said it would prove to establish Beck's guilt were that sexual penetration occurred, that the victim was a child, and that Beck was in a position of trust. Here, when Beck admitted that he had sex with his daughter, he himself established the key facts as well. "A factual basis for a plea may be established by the admission of the defendant, but the admission must contain factual statements constituting a crime or be accompanied by independent evidence of guilt." *Colenberg*, 361 So. 3d at 697 (¶10). Accordingly, because Beck admitted to the factual basis for the indictment and the crime charged, his plea was knowingly, intelligently, and voluntarily made.

### IV. Whether Beck received ineffective assistance of counsel.

¶31. Beck argues that he received ineffective assistance of counsel in violation of his constitutional rights because his attorneys failed to investigate and discover evidence of his mental illnesses that "might have reduced his sentence." Beck adds that his attorneys should have requested a mental evaluation and competency hearing. We note that Beck's PCR motion is verified and that he also attached a personal, sworn affidavit concerning this issue. However, he attached no other affidavit or affidavits to support his ineffective assistance claim. "[A] defendant's claims of ineffective assistance of counsel . . . must be supported by affidavits other than his own." *Hickerson v. State*, 336 So. 3d 1134, 1142 (¶19) (Miss. Ct. App. 2022) (quoting *Mapp v. State*, 310 So. 3d 335, 339 (¶10) (Miss. Ct. App. 2021) (quoting *Moore v. State*, 248 So. 3d 845, 851 (¶15) (Miss. Ct. App. 2017))). "A

18

post-conviction-relief motion unsupported by affidavits other than the petitioner's own fails to meet the pleading requirements of Mississippi Code Annotated section 99-39-9(1), and, thus, is deficient on its face and properly dismissed without an evidentiary hearing." *Ruffin v. State*, 410 So. 3d 1069, 1074 (¶14) (Miss. Ct. App. 2025) (quoting *Payton v. State*, 276 So. 3d 1201, 1203 (¶9) (Miss. Ct. App. 2018) (quoting *Edwards v. State*, 995 So. 2d 824, 826-27 (¶11) (Miss. Ct. App. 2008))). Accordingly, because Beck failed to file any supporting affidavit, his claim of ineffective assistance of counsel could have been properly dismissed without further discussion.

¶32. Notwithstanding, the circuit court found that Beck's claim of ineffective assistance of counsel had no merit. We agree. To prevail on such a claim, a defendant must demonstrate: (1) that his trial attorney's performance was deficient and (2) that this deficiency was prejudicial to his defense. *McDowell v. State*, 311 So. 3d 1252, 1266 (¶44) (Miss. Ct. App. 2021) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). If either element is not established, the claim fails. *Rasberry v. State*, 405 So. 3d 1281, 1289 (¶29) (Miss. Ct. App. 2025). In this case, we have already held that Beck had no viable claim of incompetency to enter a voluntary plea. The medical records he attached and his wife's letter show he was not incompetent at the time of the plea hearing. Beck has provided no other information that would have been discovered had his attorneys investigated this issue more thoroughly, as he claims. Moreover, there was a sufficient factual basis presented for Beck's plea to be accepted as knowingly and voluntarily made. Beck faced a maximum of thirty years in custody on three separate counts (ninety years of incarceration), which his counsel

successfully negotiated down to twenty years. He cannot claim prejudice from his counsel's performance when he obtained such a result.

¶33. Finally, Beck told the court, under oath, in both his plea petition and during the plea hearing, that he was satisfied with his attorney's advice. He said counsel's performance met his expectations, that he had no complaints, and that he was satisfied. "It is appropriate for a trial court to place great weight on statements made during guilty plea hearings, as there should be a strong presumption of validity of anyone's statement under oath." *Peckinpaugh v. State*, 949 So. 2d 86, 92 (¶16) (Miss. Ct. App. 2006) (internal quotation marks omitted).

¶34. In the case at hand, given Beck's admission under oath of his guilt and of his satisfaction with counsel, as well as our holdings that there were no reasonable grounds to suspect Beck was incompetent to warrant his attorney's filing a motion for evaluation or for a competency hearing, we find no merit to Beck's argument that his counsel was ineffective.

## Conclusion

¶35. We find no erroneous factual findings, abuse of discretion, nor errors of law by the circuit court in denying Beck's PCR motion. Accordingly, the order of the circuit court is affirmed.

¶36. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**